May it please the Court, Tony Agpala. In a nutshell, what we have here is a Lozada issue, the same as the last case here, but I believe it's more simplified in the fact that there was an arrangement between the respondents and their counsel to file an appeal with the Ninth Circuit. Simply, it was not done. And we're asking that this Court remand this case back to the BIA on those issues. The issues I see right now is whether or not the respondents had to do anything else here besides ask the attorney whether or not this thing had been filed. And I don't believe that they're required to do anything else here. That it's pretty straightforward that, in fact, if this case was not heard by the Ninth Circuit based upon the inability of the attorneys to file this case, that it should be returned to be heard. And basically that is the argument. Well, the difficulty is that we don't know anything about the filing of the appeal. We don't know whether he was retained to do it. We don't know whether there was a reason not to do it. We don't know whether he filed it and it was bounced. We don't know anything about it. So isn't that exactly what Lozada and the procedures adopted there was designed to produce? Well, Your Honor, we do know that the appeal was not filed. We do not know the reason for it. There was an attempt to contact counsel and they were unsuccessful in order to get a response from counsel. So we do know that. What prejudice did your client suffer other than the prejudice of not filing the appeal? Do we know whether there was any grounds for appealing? Was there any prejudice to her? The exact prejudice that they suffered was the fact that they were not given an opportunity to be heard by a court, an appeal court, based upon the fact that we feel that the Well, we don't have jurisdiction to review the hardship denials anyway. So even if the appeal had been filed, it would have been dismissed for lack of jurisdiction, wouldn't it? I'm not sure, Your Honor. Are you basing that upon the fact of Lozada, the basis of the BIA's requirements on Lozada or? No. I'm basing it on the law that we do not, the court of appeals doesn't have jurisdiction to review a determination that there are no extremely or exceptional hardship. There was no extreme or unusual hardship. Well, I think that, number one, that can be reviewed again by the Ninth Circuit. And I'm hoping that counsel would be able to address that issue when she's finished. Okay. Why don't we wait and we'll ask somebody else. Thank you. Thank you. Let the other counsel address that. Okay. Thank you very much. May I please the Court? My name is Natalie Prescott. I was a law firm of Latham & Watkins, and I was appointed by this Court to represent Petitioners as a pro bono amicus counsel. I reserve one minute for rebuttal, and I will try to watch the clock. Your Honor, this case presents a narrow issue of ineffective assistance of counsel. How about answering the question of prejudice? Absolutely, Your Honor. That is correct that this Court does not have a jurisdiction to determine whether or not the I.J. erred in deciding whether there was hardship. However, this Court retains jurisdiction under the Ninth Circuit law to decide whether all of the hardship factors were properly considered. And I would refer this Court to such cases as Ray Melendez, 342 F.3.D. at 1009, and R.K. Hernandez, 163 F.3.D. at 564. These cases and other cases provide that the Ninth Circuit retains jurisdiction to decide whether the I.J. has addressed all of the hardship factors. In this case, can you make out, can you tell us whether your client, whether the Petitioner, I'm sorry, could have made a colorable claim that the BIA did not in fact follow the correct methodology? Yes. And Your Honor is correct in that the burden on Petitioners here is only to show that they may have prevailed, not that they would have definitely prevailed. And Petitioners could have shown this before the I.J. and the BIA. One example that we have on the mediocre records that we have is the fact that Petitioner the female Petitioner was pregnant sometimes during the proceedings when the, at the very least when the BIA motion was drafted. And the previous attorney, Attorney Argonado, in her brief to the BIA had mentioned that factor, but didn't mention that issue. How does that play out? Because I, my understanding was that an unborn child was not, is not statutorily. That's correct. Yeah. A case just came out a few weeks ago that actually said that part of the case. Yes, I have. An unborn child does not have rights under this determination. However, Your Honor, pregnancy itself is a hardship factor that can and has been considered by several circuits and by the BIA in the published decision. I would refer this Court to Saldana v. INS, to Meder of Ibarra, and to Bastidas v. INS. It's the Third Circuit, the BIA case, and the Ninth Circuit published cases, all of which have considered pregnancy in some ways a hardship factor. And in all three of those cases, the case was either remanded to the BIA or the Petitioner was granted relief, partly because pregnancy was in place. If you look at this particular case, we had three qualifying relatives. We had aging parents who were close to 70 years old at the time. That was seven years ago. We had a U.S. citizen daughter who was seven. We had two of these illegal immigrants who were working very hard and paying taxes from the first time they entered the country. And they were supporting this family of two children and two parents on their own. And they were forced to, sometimes the female petitioner had to stay home and care for all of these relatives. Her pregnancy presented additional hardship for those qualifying relatives. The U.S. citizen child, who was seven at the time, and the aging parents who had surgeries and have been in and out of the hospital numerous times, they all would have suffered additional hardship financially as a result of the pregnancy, emotionally, by having to not only lose their And, of course, the caregiver issue, given that the older children had already been in school, but the younger child would require additional time caring for them. So all of those factors presented additional hardship for the qualifying relatives. And this is, you know, it is, there is not a case that says directly that, but pregnancy can be considered a hardship factor in this circuit. And I would refer the case, the court, back to Saldana 762 F2D 824. Okay. Do you want to save the rest of your time? I have, you know, I want to briefly mention a few other points. As Judge Fischer, you mentioned in the case of Maravilla 381 F3D 858. I'll take your word for it. In Morales, Morales, the case of Morales, that ineffective assistance can prejudice petitioners' inability to meet the exceptional, extremely unusual hardship. This is what we have in this case. What we have in this case is the firm of Richard Sproul, who have done such an incredibly poor job. They have taken a substantial sum of money from petitioners. They have promised to file an appeal for them, and they haven't done a single step. And petitioners have been very diligent in pursuing their appeal. They have paid the money. They have called back repeatedly. And they have worked diligently to find a subsequent attorney. And this circuit law provides that when there is such a clear and obvious case of ineffective assistance, prejudice must be presumed. In this case, no appeal was filed. Petitioners have lost an opportunity to present their case entirely. And where prejudice is presumed, this case must be remanded back to the IJ for a new hearing on the merits. All right. And I will reserve the rest of my time. All right. Please, the Court. Arthur Rabin on behalf of the Attorney General. Here, the issue is really, did the petitioner give her former attorney an opportunity to explain what happened? And that's what Matta-Lazada is all about. What the case here presents is a scenario where you have a BIA decision, an IJ decision, which denies early cancellation or removal based on the failure to show the lack of exceptional and extremely unusual hardship. The attorney then is retained to look at this case. They look at the case, and they may decide not to go forward. But then the client, without telling the attorney, then decides to file a motion to reopen and claim, lo and behold, IAC, ineffective assistance of counsel. We don't know what happened because we don't have anything from the attorney to defend himself. What this client did was basically bypass the entire Lazada regulatory scheme and go straight to a motion to reopen and say, this is per se an effective assistance of counsel because my attorney never filed a petition for review with this Court. Even though the record refreshed me. Does the record reflect any explanation to the client? The client paid money to re-cash the attorney. We have a cash check, yes. Right. And how much was that? I believe, I don't have the exact amount, but it was $1,000. Yes, right. And is there any explanation to the client, orally or in writing, as to why, having received that money, the attorney then didn't file? No, Your Honor. Not in the record. Why is that in and of itself sufficient? What response could he possibly give to say, I didn't do it, but I never bothered to tell my client? Well, I returned the money, and I told her that we don't know. You did return the money? I mean, this is the point, Your Honor, is that we don't know. This attorney has never been given the opportunity on this record to say what happened. Doesn't the – I thought Resendez said they didn't. Am I misremembering? There's nothing in the record. There's nothing about whether they got the money back. Yes, Your Honor. There's nothing in there that says what he did and why he didn't file a petition for review. What we do know is that, as the law of this Court says, which is under Falcone-Carriche, as well as Ramiro-Torres, that the Court will not review exceptional, extreme, and unusual hardship because it lacks jurisdiction to review that under the statute. So what this attorney very well may have done is said this issue is not reviewable. We will just get thrown out of court. There will be a motion to dismiss, and that will be that. Well, it would be nice if he told the client that. Well, we don't know what he told the client, Your Honor, because, again, he was never contacted. And, you know, it's a he-said, she-said situation, but the problem is it's just she-said. We don't have he-said, because she never gave an opportunity to have a defense as she was supposed to do per matter of lasada. Now, even assuming that there were some sort of ineffective assistance of counsel here, we move next to the prejudice prong. And here, under this Court's decision in Ray v. Gonzalez, which is cited in our brief, which is 439 F. 3rd 582, it says that even if there's some kind of presumption that is raised by failing to file an appeal, that may be rebutted if there is no plausible grounds for relief. That is, if Petitioner cannot demonstrate that there are plausible grounds for relief, the government has rebutted the presumption of prejudice. And here what we have is exceptional extreme and unusual hardship, possible issues. She says she claims that she was pregnant during the appeal to the board, which the IJA, of course, never considered, and whether or not that would have changed the outcome or may have affected the outcome. What we know is that the immigration judge considered the effect on the three other children. We also don't have any information that there was a problem with this pregnancy or any other factors that would show that somehow this factor alone may have affected the whole outcome of the proceeding here. Nothing like that in the record. So what we have is pure speculation on the part of counsel to say, well, had the immigration judge known about this fourth possible child, that may have affected the outcome. That's pure conjecture. What we do know is the immigration judge did consider the health, education, and consequences of deportation to the other three children and decided that that was not sufficient to meet the exceptional extreme and unusual hardship threshold. Moreover, you know, we still do not concede counsel error here. And we would like to distinguish cases like this Court's decision in Siong, which is cited in Petitioner's brief, and that's 376-1030. There, the Court held that it was ineffective assistance of counsel not to file a BIA appeal. But in that particular case, the BIA obviously had jurisdiction to consider those issues. The distinguishing feature here is the Court lacks jurisdiction to consider the issue here, so the exceptional extreme and unusual hardship. So Siong is not applicable. Same with Derringer-Volkova v. Reno, which is also cited by Petitioner. And in that particular case, it was held by this Court that a petition for review that is filed one day late is an effective assistance of counsel. Again, the distinguishing feature is that in that particular case, counsel did file, obviously thought it was a meritorious appeal, but just did it late. In our case, counsel never filed because this Court – we don't know why, but obviously because this Court does not share jurisdiction and his case would have been thrown out on a motion to dismiss. So we would, in conclusion, submit to this Court that there was no ineffective assistance of counsel on this record because failure to comply – apply with matter And there was not per se an effective assistance of counsel. And even if this Court somehow determines that there was some deficiencies, the presumption of prejudice is overcome here because Petitioner is unable to demonstrate any plausible ground for relief if the case is sent back. All right. The Court's questions. Thank you, Your Honor. Your Honor, I would refer back to Judge Fischer's decision in Morales in which Judge Fischer said that in practice, this Court has been flexible in our application of the Lozada requirements. Indeed, we seldom reject ineffective assistance of counsel claims solely based on the basis of Lozada deficiencies. In that case, Judge Fischer also pointed out that compliance with Lozada could be futile in certain cases where an attorney was, for example, suspended. This is an issue we have in this case, Your Honor. Compliance with the first and most crucial factor was met. Petitioners did file an affidavit explaining the circumstances. The other two factors, notifying the attorneys and filing a complaint with the bar, would have been futile, similar to Morales. We have a record of these attorneys being disciplined at least three times. We have several decisions from this Court remarking how incompetent these attorneys are. We have a misconduct by attorney Spurls in 75 cases. We have a 12-month probation for one of these attorneys. We have malpractice and suspension faced by another attorney. So in this case, we have a record of clear and obvious ineffective assistance, coupled with a failure to file a brief and a failure to communicate with the client. And as Judge Ripple said in the decision of Sanchez v. Keisler, we didn't know whether there was all the facts before the IJ, whether he would grant relief. All we can say is that the attorney's performance here was so deficient that petitioners didn't have the fair hearing to which the immigration statutes entitled them. This is what we have in this case. The government has conceded, Your Honor, that all the petitioners need to show is that they had plausible grounds for relief. In the three cases we cited to this Court, pregnancy alone was a factor that influenced the decisions of the BIA in two circuits, and the Court specifically noted that the pregnancy would make it difficult for the family to relocate. And we have here the circumstances where we have elderly parents who are sick, and we have two children who also have medical records and some issues in the past. And this alone is sufficient to show plausible grounds for relief. And because of this, we ask this Court to amend the case all the way to the IJ for a new hearing on the merits. I again would refer this Court to Judge Fischer's decision in Morales, where Judge Fischer emphasized that petitioners only need to show plausible grounds for relief. That's why I wrote it doesn't mean, A, that it applies with any greater force. That's correct. I appreciate you're doing your homework, but I speak, you know, the Court speaks with one voice, we try. Thank you. We appreciate your accepting the pro bono assignment, and, Counsel, we appreciate the arguments. Case argued as submitted.
judges: Ripple, Rymer, Fisher